Tagged



# ORDERED in the Southern District of Florida on May 28, 2009.

                                                Paul G. Hyman, Chief Judge
                                              United States Bankruptcy Court

___

```
                    UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF FLORIDA
                       WEST PALM BEACH DIVISION

   In re:                               Case No.: 08-25508-PGH
                                        Chapter 7 proceeding
   DAVID ARI WEINSHANK,

        Debtor.
   _____/
```

### MEMORANDUM ORDER SUSTAINING IN PART AND OVERRULING IN PART TRUSTEE'S OBJECTION TO CLAIMED EXEMPTIONS

**This matter** came before the Court for evidentiary hearing on April 27, 2009, upon Deborah C. Menotte's ("Trustee") *Objection to Claimed Exemptions* ("Objection"), wherein the Trustee objected to David Ari Weinshank's (the "Debtor") claim that funds in his Washington Mutual bank account qualify for exemption as traceable earnings deposited into a financial institution pursuant to Florida Statutes § 222.11(2)(c) and (3).

**FINDINGS OF FACT**

The facts of this matter are undisputed.[1] The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 17, 2008. The Debtor's schedules disclose that on the petition date, the Debtor had an interest in a bank account at Washington Mutual with a scheduled balance of $4,500.00. The Debtor claimed this amount as exempt pursuant to Fla. Stat. § 222.11(2)(c), Art. 10 § 4(a)(2), and Fla. Stat. § 222.061.

The Debtor is a single man who does not provide support for anyone other than himself. At the time of the filing, the Debtor was employed at Pinecrest Rehab Hospital earning $4,214.14 per month. All of the funds in the Debtor's bank account are traceable to funds he received from Pinecrest Rehab Hospital as an employee. On the date of the bankruptcy filing, the amounts within the Debtor's bank accounts included $4,631.95 within his Washington Mutual checking account, and $197.63 within his Washington Mutual savings account.

The Trustee's Objection asserts that the funds on deposit at Washington Mutual are not exempt because the Debtor is not a head of family and seeks turnover of the subject funds. The Debtor concedes that the $197.63 balance in the Washington Mutual savings account does not qualify for exemption under § 222.11(3) because the funds have been on deposit for more than six months.

---

[1] The findings of fact set forth herein are taken from the parties' Joint Stipulation of Facts. (D.E. #65).

**CONCLUSIONS OF LAW**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

**A.**   ***Florida Statutes § 222.11***

The question before the Court is whether the Debtor can apply Florida Statutes § 222.11(2)(c) and (3) to exempt funds on deposit in his Washington Mutual checking account as of the petition date. The Trustee maintains that the § 222.11(3) exemption for qualified earnings on deposit in a financial institution is not available to the Debtor because he is not a head of family. However, as discussed below, the Court finds that the Debtor is entitled to the exemption based upon a plain reading of the statute.

Fla. Stat. § 222.11 "Exemption of wages from garnishment" provides:

(1) As used in this section, the term:

    (a) "Earnings" includes compensation paid or payable, in money of a sum certain, for personal services or labor whether denominated as wages, salary, commission, or bonus.

    (b) "Disposable earnings" means that part of the earnings of any head of family remaining after the deduction from those earnings of any amounts required by law to be withheld.

    (c) "Head of family" includes any natural person who is providing more than one-half of the support for a child or other dependent.

(2)  (a) All of the disposable earnings of a head of family whose disposable earnings are less than or equal to $500 a week are exempt from attachment or garnishment.

>   (b)  Disposable earnings of a head of a family, which are greater than $500 a week, may not be attached or garnished unless such person has agreed otherwise in writing. In no event shall the amount attached or garnished exceed the amount allowed under the Consumer Credit Protection Act, 15 U.S.C. § 1673.
>
>   (c)  Disposable earnings of a person other than a head of family may not be attached or garnished in excess of the amount allowed under the Consumer Credit Protection Act, 15 U.S.C. § 1673.
>
> (3) Earnings that are exempt under subsection (2) and are credited or deposited in any financial institution are exempt from attachment or garnishment for 6 months after the earnings are received by the financial institution if the funds can be traced and properly identified as earnings. Commingling of earnings with other funds does not by itself defeat the ability of a head of family to trace earnings.

Fla. Stat. § 222.11 (2009).

In this case, it is undisputed that the Debtor is not a head of family as defined in § 222.11(1)(c), and that the subject funds represent earnings paid to the Debtor within six months of the Debtor's bankruptcy that are traceable into his Washington Mutual checking account. While courts determining contested matters pursuant to § 222.11 have considered whether someone is a head of family, what types of income constitute "earnings" under the statute, and whether such funds can be traced,[2] there appears to be

---

[2] *See e.g. Killian v. Lawson*, 387 So.2d 960 (Fla. 1980)(divorced wage earner who pays ex-wife's only support is entitled to head of family exemption); *In re Schlein*, 8 F.3d 745 (11th Cir. 1993)(drawing distinction between an independent contractor and an employee); *In re Manning*, 163 B.R. 380 (Bankr. S.D. Fla. 1994)(determining that earnings from a closely held corporation are not earnings defined within the statute); *In re Zamora*, 187 B.R. 783 (Bankr. S.D. Fla. 1995)(same, after 1993 amendments to the statute); *Matter of McCafferty*, 81 B.R. 99 (Bankr. M.D. Fla. 1987)(determining whether funds were traceable to earnings).

4

no case law determining whether the exemption provided for in § 222.11(2)(c) and (3) is available to a debtor who is not a head of family. To resolve this matter, the Court must interpret the statute starting with the plain language of the provisions to be interpreted. *Pugliese v. Pukka Development, Inc.,* 550 F.3d 1299, 1303 (*citing United States v. Silva*, 443 F.3d 795, 797-798 (11th Cir. 2006)).

**B.**   *Plain Language*

"The first rule in statutory construction is to determine whether the 'language at issue has a plain and unambiguous meaning with regard to the particular dispute.'" *Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003)(*citing United States v. Fisher*, 289 F.3d 1329, 1337-38 (11th Cir. 2002)). Courts "apply the plain language of a statute unless doing so would lead to an absurd result." *Pugliese,* 550 F.3d at 1303 (*citing United States v. Silva*, 443 F.3d 795, 797-798 (11th Cir. 2006)). "If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *CBS Broadcasting, Inc. v. EchoStar*, 532 F.3d 1294, 1301 (11th Cir. 2008)(*citing United States v. Silva*, 443 F.3d 795, 797-798 (11th Cir. 2006)). However, if the statutory language is ambiguous, courts may examine extrinsic materials, including legislative history to determine legislative intent. *Shotz*, 344 F.3d at 1167 (*citing Fed. Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1239 (11th Cir. 2000)).

The Court finds that the language of Fla. Stat. § 222.11(2) and (3) is unambiguous with regard to the dispute in this case. The statute is divided into three subsections. Subsection (1) provides definitions for three terms: "earnings", "disposable earnings" and "head of family". Subsection (2) sets forth the amount of disposable earnings that are exempt from garnishment or attachment by creditors in three different situations based upon the circumstances of the debtor. Subsection (2)(a) exempts all of the disposable earnings of a head of family whose disposable earnings are less than or equal to $500 per week. Subsection (2)(b) further exempts all of a head of family's disposable earnings which are greater than $500 per week provided the head of family has not agreed otherwise in writing. However, even if the head of family agrees otherwise in writing, in no event can the amount attached or garnished exceed the amount allowed under the Consumer Credit Protection Act, 15 U.S.C. § 1673. In contrast, subsection (2)(c) specifically addresses persons other than a head of family and exempts from attachment or garnishment, earnings of a person other than a head of family up to the limits established under 15 U.S.C. § 1673. Section 1673 generally limits the amount that can be garnished or attached to 25% of the individual's disposable earnings per week.[3]

---

[3] 15 U.S.C. § 1673. Restriction on garnishment states in pertinent part:
(a) Maximum allowable garnishment
    Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not

6

Finally, subsection (3) provides that earnings that are exempt under subsection (2), that have been credited or deposited into a financial institution, and which can be traced and identified as earnings, are exempt for six months after receipt by the financial institution. The Court finds nothing in the statute that would limit application of § 222.11's exemption provisions to situations involving only a "head of family".

The Trustee argues that even though subsection (3) generally references earnings that are exempt under subsection (2), the exemption is only provided for by subsection (2)(a), and that the remaining subsections (2)(b) and (2)(c) provide exceptions to the exemption which are subject to the limits of 15 U.S.C. § 1673. But that is not what the statute says. If the Florida Legislature intended to limit subsection (3)'s application to only those funds that are exempt pursuant to subsection (2)(a) rather than to those funds that are exempt pursuant to subsection (2) in its entirety, it could have done so. Moreover, at the hearing in response to the Court's questioning, the Trustee conceded that subsection (2)(b) also provides an exemption for a head of family. Examining the

---

    exceed
        (1) 25 per centum of his disposable earnings for that week, or
        (2) the amount by which his disposable earnings for that week exceed
        thirty times the Federal minimum hourly wage prescribed by section
        206(a)(1) of Title 29 in effect at the time the earnings are payable,
        whichever is less. In the case of earnings for any pay period other than
        a week, the Secretary of Labor shall by regulation prescribe a multiple
        of the Federal minimum hourly wage equivalent in effect to that set
        forth in paragraph (2).
15 U.S.C. § 1673(a).

language of subsections (2)(b) and (2)(c), the Court finds that they are so similar that no logical interpretation would permit the exemption to a head of family pursuant to subsection (2)(b), while disallowing the exemption to a non-head of family pursuant to subsection (2)(c). Rather, a plain reading of subsection (2) reveals that varying amounts of earnings of an individual in Florida are exempt from attachment or garnishment under three distinct circumstances relating to the status and circumstances of the individual.

**C.   *Rational Result***

The Court notes that "the plain meaning rule is not to be blindly applied if application leads to an absurd or futile result." *American Bankers Ins. Group v. United States of America*, 408 F.3d 1328, 1334 (11th Cir. 2005). The Court finds that a plain reading of Fla. Stat. § 222.11 does not lead to an absurd result. The Florida Supreme Court has stated that:

> The purpose of the exemption laws is to prevent the unfortunate citizen from being deprived of the necessaries of life and to preserve for him and his family certain things reasonably necessary to enable him to earn a livelihood, and, where his livelihood is produced by his personal labor and services, to so protect him and his family that such earnings may not be taken from them and they be left destitute and a charge upon charity.

*Patten Package Co. v. Houser*, 136 So. 353, 355 (Fla. 1931). *See also Cadle Co. v. Pegasus Ranch Inc.*, 920 So.2d 1276, 1278 (Fla. 4th DCA 2006)(quoting *Slatcoff v. Dezen*, 76 So.2d 792, 794 (Fla.1954))("In formulating its exemption laws the State has an

8

interest in preventing 'owners of exempt property and their families' from being 'reduced to absolute destitution, thus becoming a charge upon the public.'"). Section 222.11 permits a head of family whose disposable earnings do no exceed $500.00 per week to exempt all of his earnings from garnishment or attachment. The statute further provides that the disposable earnings of a head of family exceeding $500.00 per week may not be attached or garnished unless the individual agrees otherwise in writing, and then the amount available for garnishment is limited by 15 U.S.C. § 1673. However, the disposable earnings of a person other than a head of family are not so generously protected. A person other than a head of family is unable to exempt the first $500 per week of disposable earnings and a creditor of such an individual is not required to obtain an agreement in writing before garnishing the individual's disposable earnings up to the limits of 15 U.S.C. §1673. Thus, Fla. Stat. § 222.11 protects a higher proportion of a head of family's disposable earnings as compared to a person who is not a head of family. There are sound reasons for the different treatments. By providing protection for more of a head of family's disposable earnings, the statutory scheme recognizes that a head of family bears additional responsibilities and support obligations for their dependents. Thus, a plain reading of the statute produces a rational result rather than an absurd result.

**D.    *Ambiguity?***

Although the Court finds that the language of § 222.11 is

9

plain with regard to this dispute, there does exist an ambiguity in the statute. The ambiguity arises in the interplay between the definition of "disposable earnings" in subsection (1)(b) and the use of that term in subsection (2)(c). Subsection (1)(b) defines "disposable earnings" as "that part of the _earnings of any head of family_ remaining after deduction from those earnings of any amounts required by law to be withheld" (emphasis added). Although the term "disposable income" is defined with reference to a head of family, it is then used in subsection (2)(c) which specifically addresses persons other than a head of family. Replacing the term "disposable earnings" in subsection (2)(c) with its definition pursuant to subsection (1)(b) produces the following internally inconsistent statement: "[that part of the _earnings of any head of family_ remaining after deduction from those earnings of any amounts required by law to be withheld] _of a person other than a head of family_ may not be attached....." (emphasis added). The Court does not believe this ambiguity affects the issue of whether the exemption is available to a debtor who is not a head of family. Nevertheless, the Court will briefly examine extrinsic legislative history concerning this provision.

When analyzing statutes, the Court is mindful that it must presume that the legislature said what it meant and meant what it said. _Shotz_, 344 F.3d at 1167. Furthermore, "[i]t is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no

10

clause, sentence, or word shall be superfluous, void, or insignificant.' " *Pugliese*, 550 F.3d at 1303 (*quoting TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001)(*quoting Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001))).

The current version of § 222.11 with its enumerated sections and definitions became effective in October 1993 (the "1993 Amendment"). The previous version of the statute was a single paragraph which contained no protection from garnishment or attachment for the earnings of anyone other than a head of family.[4] Although the exemption is commonly referred to as the "head of family" exemption, the addition of subsection (2)(c) in the 1993 Amendment extended the wage exemption to individuals who are not heads of family. To conclude otherwise would impermissibly render subsection (2)(c) superfluous, void, or insignificant. Indeed, the Court presumes that the Florida Legislature said what it meant and meant what it said - that the disposable earnings of a person other than a head of family may not be attached or garnished in excess of the amount allowed under the Consumer Credit Protection Act. The

---

[4]The prior version of §222.11 stated:
No writ of attachment or garnishment or other process shall issue from any of the courts of this state to attach or delay the payment of any money or other thing due to any person who is the head of a family residing in this state, when the money or other thing is due for the personal labor or services of such person. As used in this section, the term "head of family" includes any unmarried, divorced, legally separated, or widowed person who is providing more than one-half of the support for a child or other dependent. This exemption shall apply to any wages deposited in any bank account maintained by the debtor when said funds can be traced and properly identified as wages.
Fla. Stat. §222.11 (1992).

11

ambiguity noted above is most likely a result of sloppy drafting. However, the existence of this internal inconsistency does not negate the Court's findings herein.

D.  *Trustee's Remaining Arguments*

The Court finds the Trustee's remaining arguments unpersuasive. The Trustee argues that allowance of a wage exemption for a non-head of family pursuant to § 222.11(2)(c) is tantamount to adopting a federal exemption in the Consumer Credit Protection Act which the Florida Legislature did not intend. However the Court finds that if the Florida Legislature intended to deny a wage exemption to a person who is not a head of family, it could have done so. Section 222.11 is clear and must be construed as written.

The Trustee's reliance on *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431 (1974) is misplaced and not on point. In *Kokoszka*, the Court determined that an income tax refund was property of the estate and that the Consumer Credit Protection Act did not restrict the right of the trustee to treat the income tax refund as property of the estate. *Id.* at 652, 2437. The Court noted that upon filing a petition, the debtor's remedy remained under the Bankruptcy Act. *Id.* at 651, 2436. In this case there is no conflict between the provisions of the Bankruptcy Code and the Consumer Credit Protection Act. Florida long ago opted out of the federal exemption scheme in favor of utilizing its own exemptions. The exemptions available to Floridians are generally found in Fla. Stat. § 222.01 *et. seq.* That the Florida Legislature incorporated the Consumer

Credit Protection Act's limits on garnishment into Florida's scheme of exemptions in § 222.11 does not render the Consumer Credit Protection Act an independent source of exemptions that is in conflict with the Bankruptcy Code and Florida law as the Trustee's argument suggests.

Finally, in support of his position that the wage exemption is only available to a head of family, the Trustee references subsection (3) which states in part that "comingling of earnings with other funds does not by itself defeat the ability of a head of family to trace earnings". The Court notes that the referenced language does not prohibit the wage exemption to all but heads of families as the Trustee urges. Instead it offers an additional safeguard to a head of family when tracing earnings that have been comingled with other funds. This is consistent with the statute's preferential treatment for heads of family such as, for example, protecting a larger proportion of a head of family's disposable earnings. It is also consistent with Florida's policy of ensuring that families do not become a charge upon society.

Since it is undisputed that the subject funds in this case are earnings of the Debtor that are traceable into the Washington Mutual account, the Court finds it unnecessary to address Trustee's final hypothetical argument which involves the hypothetical practical difficulties of tracing hypothetical earnings into a hypothetical bank account. However, the Court notes that the burden of proof to solve any such hypothetical tracing problems would fall

to the Debtor.

## CONCLUSION

Based upon a plain reading of Fla. Stat. § 222.11 and the undisputed facts of this matter, the Court finds that even though the Debtor is not a head of family, he may exempt funds deposited into his Washington Mutual checking account within six months of his bankruptcy filing that can be traced and properly identified as earnings.

## ORDER

The Court, having considered the evidence, the testimony of the witnesses, the argument of counsel, the applicable law, the submissions of the parties, and being otherwise fully advised in the premises hereby,

**ORDERS AND ADJUDGES:**

1. The Trustee's Objection to Claimed Exemptions is sustained in part and overruled in part.

2. The funds in the amount of $197.63 contained in the Debtor's Washington Mutual savings account on the date of the bankruptcy are non-exempt property of the bankruptcy estate.

3. As to the $4,631.95 contained in the Debtor's Washington Mutual checking account on the date of the bankruptcy, and any unallocated exemption available to the Debtor pursuant to Article X, §4, the parties are directed to confer and stipulate as to the exact amounts of property that are exempt and non-exempt in light of this opinion. If the parties are unable to agree, they may contact the Courtroom Deputy to schedule an appropriate hearing.

###

```
Copies furnished to:
David Ari Weinshank, 132 Meadows Dr., Boynton Beach FL 33436-9136
Deborah Menotte
Michael R. Bakst, Esq.
John L. Walsh, Esq.
Scott R. Weiss, Esq.
AUST
```